UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SEAN BASINSKI,

                Plaintiff,

  -v-                                               No.  14CV1057-LTS-DCF

THE CITY OF NEW YORK et al.,

                Defendants.
-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        In this action brought pursuant to 42 U.S.C. § 1983 ("Section 1983") Plaintiff Sean Basinski ("Basinski" or "Plaintiff") asserts claims for numerous alleged constitutional violations on the part of Defendants Police Officer Robert Browne ("Browne") and Lieutenant John Cocchi ("Cocchi" and, collectively, "Defendants") including: false arrest and imprisonment in violation of the Fourth Amendment; interference with an activity protected by the First Amendment; retaliatory arrest in violation of the First Amendment; and malicious abuse of process.[1]  (See Docket Entry No. 2., Complaint ¶ 27.)  On October 26, 2015, following the close of discovery, Defendants filed the instant motion for summary judgment seeking dismissal of Basinski's claims.  (Docket Entry No. 33.)  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

        The Court has carefully considered the parties' submissions.  For the reasons

---

[1]     Basinksi also asserted a Section 1983 claim for municipal liability as against the City of New York pursuant to the Supreme Court's holding in <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978), but that claim has since been withdrawn.  (<u>See</u> Docket Entry No. 39, Declaration of David B. Rankin in Opposition to Defendant's Motion for Summary Judgment ("Rankin Decl.") ¶ 55.)  Moreover, while Defendants originally read Basinski's Complaint to assert a claim for malicious prosecution, Plaintiff has since stated that he never intended to assert any such claim.  (<u>See id.</u> ¶ 54.)

stated below, Defendants' motion is granted, and Plaintiff's claims are dismissed in their entirety.

## BACKGROUND[2]

Plaintiff Sean Basinski is an attorney admitted to practice law in New York State, and is the founder and director of the Street Vendor Project at the Urban Justice Center. (See Rankin Decl. ¶¶ 4-5.) The Street Vendor Project is a membership-based project that seeks to "raise public awareness about vendors" and to "teach [vendors] about their legal rights and responsibilities." (See id. ¶ 6, Ex. 2.)

On September 19, 2013, Basinski was in or around the vicinity of a police precinct at 306 West 54 Street, New York, NY, along with two professional acquaintances, Annie Matthews and Mohammed Omar ("Omar"). (Def. 56.1 St. ¶¶ 1-2.) Basinski observed a street vendor and knew that "something was going on" because a vendor would not normally be stopped in front of a police precinct. (Id. ¶¶ 3-4.) Basinski approached the vendor and engaged him in conversation.[3] (Id. ¶ 5.) At one point during the course of this conversation, the vendor offered Basinski drinks from his cart. (Def. 56.1 St. ¶¶ 9-10.) At that time, P.O. Browne, who was in uniform, approached the vendor, whom he believed was vending to Basinski. (Id. ¶¶ 11-

---

[2]   The facts recited herein are undisputed unless otherwise indicated. Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence, including videos of the encounter, as to which there is no non-conclusory contrary factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St."), and to the Declaration of David B. Rankin, incorporate by reference the parties' citations to underlying evidentiary submissions.

[3]   The precise nature and extent of the conversation is disputed, as is whether Basinski offered the vendor any assistance, legal or otherwise. (Id. ¶¶ 6-8; Pl. 56.1 St. ¶¶ 6-8.)

13.)  Basinksi claims that the vendor believed that Browne was going to issue him a summons, while Defendants assert that Browne was actually "in the process of issuing a summons" when he observed the interaction between the vendor and Basinski.  (Pl. 56.1 St. ¶ 13-14; Def. 56.1 St. ¶ 13-14.)  Basinski then told Browne that the vendor was not, in fact, vending, and took out his iPhone to begin video recording their interaction.  (Def. 56.1 St. ¶¶ 15, 17, 18.)  Omar also began to film the encounter between Basinski and Browne.  (See Def. 56.1 St. ¶ 16, 19, 20; Pl. 56.1 St. ¶ 16.)

Browne alerted Basinksi that he was conducting police business with respect to the vendor and asked Basinski to move aside.  (Def. 56.1 St. ¶ 21.)  Basinski claims that he complied, moving to an area of the sidewalk where he could not possibly have been blocking pedestrian traffic, and that he told Browne that he was not in Browne's way.  (Pl. 56.1 St. ¶ 21; Def. 56.1 St. ¶ 22.)  Browne responded by telling Basinksi that he was, in fact, in Browne's way and asserting that Browne was blocking pedestrian traffic.  (Def. 56.1 St. ¶ 23.)  Basinski responded by telling Browne that he too was blocking pedestrian traffic.  (Id. ¶ 24.)  It is undisputed that, following his initial relocation, Basinski refused to comply with further instructions to move away, indicating that he believed that he was no longer in the way and thus did not have to move.  (See generally id.)  A "back-and-forth" between Browne and Basinski ensued, and at some point Basinski told Browne, in sum and substance, that he could arrest him if he wanted to.  (See id. ¶¶ 25-26.)  Browne repeatedly asked Basinski to move aside.  (Id. ¶ 30.)

At that time, Browne also stated to Basinksi, who is taller than Browne, that Basinski was breathing heavily and behaving in a way that was making Browne "nervous."  (Id. ¶¶ 29-30.)  In an Arrest Report drafted by Browne, Browne indicated that he "was alone and now realized there were three people around him and felt unsafe, the deft was shakey [sic] and

seemed nervouse [sic] and started to make the a/o feel unsafe." (See Docket Entry No. 36, Declaration of Daniel M. Braun ("Braun Decl."), Ex. C ("Arrest Report").) Moreover, in a portion of Basisnki's video recording of the confrontation provided to Defendants in discovery, Browne can clearly be heard telling Basinski "you're acting very nervous right now, your breathing is starting to make me a little nervous, so I'm asking you to move to the side." (See Braun Decl., Ex. D ("Basinski Video").) Additionally, when viewing Omar's video recording of the confrontation, it can be seen that Basinski is taller than Browne and physically imposing; that Basinski repeatedly slid his right hand into his pants pocket throughout the course of the interaction; and that Basinski kept his left hand elevated to hold his phone – a hard object – at face level, within striking distance of the officer. (See Rankin Decl., Ex. 8 ("Omar Video").) It can also be seen that, when Browne attempted to turn his focus from Basinski back to his original police business, Basinski took a step towards Browne, rather than remaining off to the side as instructed. (See id. at :16.)

   Some number of pedestrians stopped to observe the scene. (Def. 56.1 St. ¶ 36.) When Browne instructed one of those individuals to move along, Basinski interjected, stating, in sum and substance, "that's where you wanted me to go." (Def. 56.1 St. ¶ 38.) When Browne responded, in sum and substance, that he was addressing another individual, Basinski replied, in sum and substance, "I was talking to you; I can talk to you, which I'll do." (Id. ¶ 39.) Basinski admits that, as a result of his encounter with Browne, Browne was focused much more intently on Basinski than on the vendor. (Id. ¶ 40.)

   Lieutenant Cocchi then arrived on the scene, identifying himself as a lieutenant. (Id. ¶ 41.) Cocchi asked Basinski for his identification, which Basinski refused to provide. (Id.

¶¶ 42-43.)  Finally, after repeated requests to move[4] and to provide his identification, Basinski was placed under arrest for obstructing governmental administration in the second degree (in violation of N.Y. Penal Law § 195.05) and disorderly conduct: obstructing traffic (in violation of N.Y. Penal Law § 240.20(5)).  (Id. ¶¶ 44-45.)  Basinski ultimately accepted an adjournment of the charges in contemplation of dismissal.  (Id. ¶ 46.)

## DISCUSSION

Rule 56 Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is to be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Therefore, the claim of a party that is unable to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will not survive a Rule 56 motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the burden of demonstrating the absence of a material fact, and the court must be able to find that, "'after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party.'"  Marvel Entertainment, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)).

For the purposes of summary judgment motion practice, a fact is considered

---

[4]  The parties dispute whether or not Basinski acceded to these requests.  (See Def. 56.1 St. ¶ 44; Pl. 56.1 St. ¶ 44.)

material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted). Evidence that is "merely colorable or not significantly probative" is insufficient to defeat a motion for summary judgment. Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 346 (2d Cir. 1999). "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "As to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case." Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).

    Defendants argue that they are entitled to summary judgment on each of Plaintiff's claims because there was probable case for Basinski's arrest and that, at a minimum, they are entitled to qualified immunity on the basis of arguable probable cause. (See generally Docket Entry No. 34, Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Memo").) Because the undisputed evidentiary record, even when viewed in the light most favorable to Plaintiff, is sufficient to establish that arguable probable cause existed for Plaintiff's arrest, Defendants are entitled as a matter of law to the dismissal of Basinski's false arrest and abuse of process claims on the grounds of qualified immunity. As explained below, Defendants are also entitled to qualified immunity with respect to Basinski's First Amendment claims, in light of the fact that Basinski has failed to demonstrate that Browne and Cocchi acted in a manner that constituted a violation of a clearly established right.

Plaintiff's Fourth Amendment Claims

*Qualified Immunity Standard*

Basinski has asserted a claim of false arrest in violation of the Fourth Amendment.  (See generally Complaint.)[5]  In the instant case, Basinski was arrested for obstructing governmental administration in the second degree and for disorderly conduct: obstructing traffic.  (See Docket Entry No. 36, Declaration of Daniel M. Braun ("Braun Decl."), Ex. C ("Arrest Report").)  The parties dispute whether Browne had probable cause to arrest Basinski for either of these offenses; the existence of probable cause for either would defeat entirely Basinski's claim for false arrest.  See, e.g., Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  Whether or not probable cause actually existed for Basinski's arrest on these bases, the Court finds that, as a matter of law, Browne is entitled to qualified immunity with respect to Basinski's Fourth Amendment false arrest claim because the officers had arguable probable cause to arrest Basinski.

"The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those

---

[5] "The elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law." Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992) (internal quotation marks and citations omitted). "Under New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (quoting Broughton v. State, 37 N.Y.2d 451, 456 (1975)).

rights." Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal quotation marks and citations omitted). "The doctrine accommodates (on the one hand) the interest in protecting public officials from undue interference with their duties and from potentially disabling threats of liability . . . and (on the other hand) the interests in deterring public officials' unlawful actions and compensating victims of such conduct." Id. at 318 (internal quotation marks and citations omitted). "An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007) (quoting Lennon v. Miller, 66 F.3d 416, 423-24 (2d Cir. 1995)). The Second Circuit has held that, "[i]n the context of § 1983 actions predicated on allegations of false arrest . . . an arresting officer is entitled to qualified immunity so long as 'arguable probable cause' was present when the arrest was made . . . A police officer has arguable probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met . . . Put another way, an arresting officer will find protection under the defense of qualified immunity unless 'no reasonably competent officer' could have concluded, based on the facts known at the time of arrest, that probable cause existed." Figueroa v. Mazza, No. 14-4116-cv, 2016 WL 3126772, at *6 (2d Cir. June 3, 2016) (internal quotation marks and citations omitted). Furthermore, the Supreme Court has recognized that the standard for qualified immunity is a forgiving one, in that "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks and citations omitted).

*Application*

As noted, Browne arrested Basinski for obstructing governmental administration in the second degree and for disorderly conduct: obstructing traffic.  A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, [or] by means of any independently unlawful act . . . "  N.Y. Penal Law § 195.05 (McKinney 2016.)  Under New York law, this crime "requires as an element . . . that the accused act by one of three methods: (1) intimidation; (2) physical force or interference, or (3) any independently unlawful act."  <u>Uzoukwu v. City of New York</u>, 805 F.3d 409, 414 (2d Cir. 2015) (internal quotation marks and citation omitted).

Basinski's argument in opposition to Defendants' motion for summary judgment appears to be entirely premised on the lack of any evidence of Basinski's <u>physical</u> interference with the administration of Browne's duties.  (<u>See</u> Docket Entry No. 40, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Memo") at pp. 14-15.)  Basinski, however, fails to address Defendants' contention that Basinski impaired Browne's performance of his duties by intimidating Browne.  As described above, video recordings of the interaction between Browne and Basinski show that Basinski is taller than Browne in way that is physically imposing, that he repeatedly slid his hand into his pants pocket during the course of the interaction, and that he kept his arm elevated in order to hold his phone at face level, within striking distance of the officer.  (<u>See</u> Rankin Decl., Ex. 8 ("Omar Video").)  Basinski was vociferously argumentative with Browne, interjected into interactions with third parties in a seemingly provocative manner, and drew Browne's attention away from the

summons-related interaction with the vendor.  (See generally Basinski Video, Omar Video; Def. 56.1 St. ¶ 40.)

Moreover, Browne made it clear to Basinski that he felt uncomfortable, explaining that Basinski was breathing heavily and behaving in a way that was making him nervous, a statement that can clearly be heard in a portion of Basinski's video recording.  (See Def 56.1 St. ¶¶ 29-30; Basinski Video.)  This is corroborated by Browne's arrest report, in which he noted that he "felt unsafe, the deft was shakey [sic] and seemed nervouse [sic] and started to make [Browne] feel unsafe."  (See Arrest Report.)  These facts provided an objective basis for Browne to have reached the objectively reasonable conclusion that there was probable cause for an obstruction of justice arrest based on Basinski's behavior.   The Court finds at the very least, in light of the evidence before it, that "officers of reasonable competence could disagree on whether the probable cause test was met," with respect to Basinksi's arrest for obstructing governmental administration pursuant to N.Y. Penal Law § 195.05, which is sufficient to sustain Browne's claim of qualified immunity.  Certainly the record before the Court does not indicate that Browne operated in a manner that demonstrates that he is "plainly incompetent" or that he "knowingly violate[d] the law," and, under these circumstances, he is entitled to the protection of qualified immunity here.  Messerschmidt, 132 S. Ct. at 1244.

In light of the foregoing, the Court grants Defendants' motion for summary judgment, insofar as it seeks dismissal of Plaintiff's Fourth Amendment claims for false arrest/imprisonment, on the basis of qualified immunity.[6]

---

[6] For the same reasons, the Court dismisses Basinski's claim for abuse of process.  Courts within this Circuit have recognized that a finding of arguable probable cause for an arrest vitiates a claim for abuse of process based on that arrest.  See, e.g., Pinter v. City of New York, 976 F. Supp. 2d 539, 570 (S.D.N.Y. 2013) ("the Second Circuit's conclusion that the individual defendants had arguable probable

Plaintiff's First Amendment Claims

Basinski asserts that "P.O. Browne and Lt. Cocchi violated Mr. Basinski's First Amendment right to record police conduct by arresting him," making, in essence, a First Amendment retaliation claim and a claim for interference with a right protected by the First Amendment. (See Pl. Memo at p. 16.) Once again, Defendants' assertion of qualified immunity prevails with respect to these claims. As already noted, "[t]he doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bradway, 26 F.3d at 317 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (emphasis added). Thus, if Basinski's claimed right to record police activity has not been "clearly established" as either a statutory or constitutional right, Browne and Cocchi are entitled to qualified immunity on Basinski's First Amendment claims.

When conducting a qualified immunity analysis, courts within this Circuit "look to Supreme Court and Second Circuit precedent existing at the time of the alleged violation to determine whether the conduct violated a clearly established right" protected by the First Amendment. See Okin v. Village of Cornwall-On-Hudson Police Department, 577 F.3d 415, 433 (2d Cir. 2009). "When neither the Supreme Court nor this court has recognized a right, the law of our sister circuits and the holdings of district courts cannot act to render that right clearly

---

cause forecloses [plaintiff's] abuse of process claims against them") (citing Ketchuck v. Boyer, No. 10CV870, 2011 WL 5080404, at *8 (N.D.N.Y. Oct. 25, 2011) (holding that "arguable probable cause provides an objectively reasonable justification for issuing process," and thus gives rise to qualified immunity against an abuse of process claim no less than against a false arrest claim)); Betts v. Shearman, 751 F.3d 78, 81 (2d Cir. 2014) ("because arguable probable cause existed to arrest Betts, his claims for false arrest, false imprisonment, abuse of process, and malicious prosecution were properly dismissed.").

established within the Second Circuit." Pabon v. Wright, 459 F.3d 241, 255 (2d Cir. 2006) (citing Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003)). "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful." Anderson, 317 F.3d at 197. In addition, in order to be "clearly established" for the purposes of a qualified immunity analysis, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," Anderson v. Creighton, 483 U.S. 635, 640 (1987), and "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2983 (2011) (emphasis added).

The Court finds that Browne and Cocchi are entitled to qualified immunity on Basinski's First Amendment claims because the right to record police activity is not one that was "clearly established" beyond debate within this Circuit the time of Basinski's arrest. Notably, "[a]t the time of the acts alleged in the Complaint, the right to photograph and record police officers who are engaged in an ongoing investigation was not clearly established as a matter of constitutional law in this Circuit." See Rivera v. Foley, No. 3:14CV00196-VLB, 2015 WL 1296258, at *9 (D. Conn. Mar. 23, 2015); see also Mesa v. City of New York, No. 09CV10464-JPO, 2013 WL 31002 (S.D.N.Y. Jan. 3, 2013) ("While district court decisions in this Circuit have dealt with similar cases involving both recordation and disorderly conduct prosecution . . . no Second Circuit case has directly addressed the constitutionality of the recording of officers engaged in official conduct.") Indeed, the "circuits are split on this issue. The First Circuit, Seventh Circuit, Eleventh Circuit, and Ninth Circuit all recognize that the First Amendment protects the photography and recording of police officers engaged in their official duties . . . The

Third Circuit and the Fourth Circuit take the contrary approach." Rivera, 2015 WL 1296258, at *9. However, as explained above, when neither the Supreme Court nor the Second Circuit has recognized a right, the "law of our sister circuits and the holdings of district courts cannot act to render that right clearly established within the Second Circuit." Pabon, 459 F.3d at 255. Basinski has failed to proffer a case, and this Court can find none, wherein the Second Circuit has recognized that the right to record police activity is protected by the First Amendment.[7] Nor has Basinski demonstrated that "the law [enshrining the right to record police activity] is defined with reasonable clarity[, that] a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful," Anderson, 317 F.3d at 197, or that "the statutory or constitutional question beyond debate." al-Kidd, 131 S. Ct. at 2983.

Furthermore, courts within this Circuit have recognized that "in cases where the right to record police activity has been recognized by our sister circuits, it appears that the protected conduct has typically involved using a handheld device to photograph or videotape at a certain distance from, and without interfering with, the police activity at issue." Rivera, 2015 WL 1296258, at *10 (citing Am. Civ. Liberties Union of Illinois v. Alvarez, 679 F.3d 583, 607 (7th Cir. 2012) ("Nothing we have said here immunizes behavior that obstructs or interferes with

---

[7] In this connection, Basinski's argument that the Court should divine such a right from by combining the rights of "filming on one hand, and . . . criticism of officers on the other," implicitly acknowledges that the Second Circuit has not recognized that this activity is protected by the First Amendment. (See Pl. Memo at pp. 16-17.) Moreover, Basinski's argument that "the act of filming and recording government activity implicitly carries the message that the recorder is critical of that conduct" is baseless and unsupported by case law. (See id.) The Court declines to accept such a speculative basis for recognizing a constitutionally protected right. Indeed, as Defendants point out, "a private individual might intend to record police conduct to protect an officer against baseless claims." (See Docket Entry No. 43, Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Reply Memo") at p. 9.)

effective law enforcement or the protection of public safety"); Gilk v. Cunniffe, 655 F.3d 78, 84 (1st Cir. 2011) (permitting recording of police activity where it was filmed "from a comfortable remove" and individual "neither spoke to nor molested [the officers] in any way.").)  These cases are clearly distinguishable from the instant case, where Basinski filmed Browne from mere feet away and admitted to having drawn his attention from the police business at hand.  (See Def. 56.1 St. ¶ 40.)

Because Basinski has not demonstrated that Browne and Cocchi violated a "clearly established" right when they prevented him from recording Browne's interaction with the vendor, the officers are entitled to qualified immunity on this claim.  In light of the foregoing, the Court grants Defendants' motion for summary judgment insofar as it seeks dismissal of Plaintiff's claim that his First Amendment rights were violated.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment seeking dismissal of Plaintiff's Fourth Amendment, First Amendment and malicious abuse of process claims is granted in its entirety.  In light of Plaintiff's withdrawal of his <u>Monell</u> claim and his contention that he did not raise a claim for malicious prosecution, Plaintiff's Complaint is dismissed in its entirety.

This Memorandum Opinion and Order resolves Docket Entry Number 33.  The Clerk of Court is hereby directed to enter judgment in Defendants' favor and to close this case.

SO ORDERED.

Dated: New York, New York
      June 14, 2016

      /s/ Laura Taylor Swain
    LAURA TAYLOR SWAIN
    United States District Judge